The Chief Justice
delivered the opinion of the court.
Charles C. Myers and twelve other-persons, as complainants, claim in the bill the right of borrowing members as existing at the time of the filing of the bill, in the building association entitled ‘ ‘The Eleventh Building Association of Georgetown, ’ ’ against Louis Schoyer, Daniel J. Logan, Richard Powell, Jesse H. Wilson and Mayhew Plater, who are alleged in the bill to be officers and trustees- of the association. The bill alleges that the association did business apparently in conformity with the scheme provided by its by-laws until November, 1885, having been organized in February, 1876, and that about the month of November, 1885, owing to the onerous burdens assumed and payments made by borrowing members sufficient had been paid into the association, which, if it had been properly applied, would have cancelled the shares upon which the complainants made their loans, and that in fact at that date the board of trustees had determined upon *255 one hundred and eight months as the period of the existence of the association, and had made settlements with a number of borrowing members upon the basis of payments for a period of a hundred and eight months. They further allege that about the month of November, 1885, it became known to the members of the association that the operations of the association had not been conducted properly; that a large amount of money “in the aggegate, amounting to forty thousand dollars had been drawn from its treasury by Ferdinand King, its secretary, for which the association received no consideration or security; and that large sums of money had been received by said King from' members on account of dues and advances, which had not been paid into the treasury,” by him. And that on account of.-this disregard of duty, in November, 1885, there was practically a cessation of the operations of the association under their scheme, all the members who had not received loans ceased making payments and no payments have since been made bjr them, and, that with one or two exceptions, all the members who had received loans ceased making payments, and withdrew from the association and sought to obtain from its officers statements of their account with a view to the settlement of their indebtedness; that it was the general impression of the members, in view of the extraordinary situation, that nothing remained to be done except to receive from the borrowing members such sums as might then be due on a settlement of their loans, and that thereafter the business of the association could only be continued for that purpose. That the complainants were members who had obtained loans, executed bonds and given security for the same; that they had paid more than their respective real indebtedness with interest, and had been prevented from making settlements with the association by the wrongful acts of the defendants, or some of them. The subsequent parts of the bill set forth the situation of the complainants, the amount of the various loans, the amount of money which they paid, and the time that they ceased making the payments, and the fact that some time between the months of November, 1885, and September, 1886, a demand *256 was made upon the association, that their accounts should be stated in order that they might settle with the association as borrowing members. The statement is made, that this demand was made of the secretary, who succeeded to King after the discovery of the defalcation, and that in the first instance those who made the demand on him were postponed for the reason that he, having recently come into the association and the accounts being in confusion, it would take considerable time to make the statements of account, and after-wards the complainants were further postponed for the reason that the board of trustees ordered the books and papers of the association to be placed in the hands of an expert, Mr. Donovan for the purpose of making a full statement of the affairs of the association, and the operations of the members with the association; that this state of facts continued until the 30th of July, 1886, when a meeting of the association was held, at which it was the expectation of the members that there would be a full statement of the condition of the association, and these complainants expected that there would then be such a statement of their accounts as would enable them to settle with the association. The averment is made that at that meeting, however, the board of trustees announced, or some of the officers of the association announced, that the board had determined that no settlements on the part of the borrowing members should be allowed; that they had come to the conclusion that such a course would not be just to the non-borrowing members, and that the complainants would have to continue for an indefinite period to pay their dues as they therefore had, and thereafter each of these complainants received a statement of their account, not under article 2, section 6, of the constitution, which would enable them to settle and withdraw as borrowing members, but a statement of the amount due from them on the 30th of July, 1886, upon the basis of their continuing as borrowing members of the association. Thereupon the association refused to permit them to withdraw, and refused to furnish an account that would enable the complainants to take any steps in that direction. It further appears that early in September, 1886, *257 arrangements were made by the borrowing members with the officers of the association to make a test case, and to this end the association was to issue an order to the trustees to sell the property of some one of the borrowing members, because of default in making the payment of dues and advances, so that a suit might be commenced for the purpo'se of determining the legal rights of the borrowing members. Thereupon steps were taken by the board of trustees against one Collins, a borrowing member, and an order made to the trustees requiring that the property of Collins should be advertised and sold for the purpose of liquidating the dues which he had failed to pay. Collins commenced his action in this court to restrain the trustees from making sale of the property and also for an account with a view to making a final settlement. Of that bill, without stating all that is in it, we may say that there was no statement such as we have made of the contents of the present bill with regard to the action of the members in asking for their account for the purpose of retiring from the association under the provisions of article 2, section 6; but the statement was made in the bill in Collins’ case that the borrowing members were all entitled to be discharged from the association, because of the fact of the association having, previous to November 18, 1885, fixed upon the period of one hundred and eight months as the life of the association, and because of the fact of the insolvency of the corporation by reason of the defalcation of the secretary, making it impossible to proceed with the business. Collins did not aver that he ever made a demand of the association to be discharged. The Collins case was decided April 5, 1889. The court held that the bringing of the suit by Collins might properly be considered as a demand for a settlement, and that he was entitled, under the averments of his bill and the circumstances of the case in evidence, to retire from' the association upon the basis fixed in section 6 of article 2, and a decree was rendered in accordance with that view. The provision of section 6 of article 2, of the constitution of the association is as follows: “Any stockholder desiring to settle a loan shall be charged with the actual amount loaned him, together with all fines due, and *258 credited with the amount of dues paid in upon the stock on which the loan has been made.”
It was expressly held in the case of Collins, that it was an action simply for the settlement of his account, and that there were sufficient averments in the bill to authorize the court to sustain the bill and decree a settlement under the provisions of section 6, before recited. And it was then expressly held that the provisions of the bill were not sufficient for the court to consider the position of the association as to its business generally, or to undertake to settle in any way the affairs of the association in its relation to the members, whether borrowing members or non-borrowing members, nor to consider the aspect of its being an insolvent concern. Applying the theory adopted in the Collins’ case,- it follows that the complainants, under the averments of this bill, are entitled to have a settlement of their accounts as borrowing members under section 6 of article 2 of the constitution, and that we are not authorized to meddle with the general affairs of the association, nor to consider what may be the liabilities of the borrowing members to creditors, for instance, if there are any of the association, nor to settle the relations of the members, borrowing and non-borrowing, as between themselves as to the profits and losses.
There are some points of difference between this and the Collins case. As before stated, in the Collins case, there was no demand averred to have been made on the trustees for settlement prior to the commencement of the suit. In this case demands are averred and substantially proved to have been made on the trustees for settlement before the commencement of the action. Again, in this case it is shown that a peculiar state of circumstances existed prior to the commencement of the Collins action which are not stated in the Collins bill. As already stated, the association determined at its meeting in July, 1886, that it would not settle the accounts of the borrowing members, but that they should continue to be borrowing members indefinitely, and denied the right of the borrowing members to be released under the terms of section 6 of article 2 of the constitution, and, thereupon, issued a notice *259 to each, one of the borrowing members, contrary to their previous request to be released, requiring them to pay their dues up to that time as continuing members on penalty of having their property sold for the purpose of satisfying the same. As there was no demand in the Collins case, we held that the right could not be deemed to have accrued until demand, and that the commencement of the action itself should be considered as a demand. But here we find that the dernands were made and that such a case existed to which the attention of the members were directed before July, 1886, and that it caused a delay in the action of the complainants. The officers of the association had been suspended, no dues had been .paid by either borrowing or non-borrowing members after discovery of the defalcation; all were awaiting the result of the investigation made by an expert, and when that result was procured, and the attention of the complainant brought to the matter, they were told that they could not have their accounts settled with a view of liquidating their indebtedness to the association, and ceasing to be borrowing members. It is quite manifest that owing to the confused condition of the books and accounts of the association, making it necessary to employ the services of an expert, that the complainants could not have been furnished an accurate statement of their respective accounts before the meeting of July 30, 1886, and it is quite as evident that at the latter date the association could have furnished to them such a statement. We therefore adopt the 31st of July 1886, as the time when the complainants are entitled to be discharged as borrowing members by the payment of all dues in default up to that date.
They are to be charged with the amount of their loans and unpaid dues and are to be credited with the amount of dues paid in upon the stock upon which the loan is made, and a balance struck, which balance will show the amount due from each of the complainants to the association on the 31st day of July, 1886. Upon this balance the association will be entitled to interest from July 31, 1886. Upon the payment of such balances and interest by the complainants, they will be entitled to have their bond, which they executed for the payment of *260 the money, delivered to them and the mortgages or other securities cancelled and delivered to them.

A decree may be entered accordingly.